IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, a foreign insurer<br><br>Plaintiff,<br><br>vs.<br><br>MARA A. SNYDER, an individual; PACIFIC COAST FAMILY LAW, PLLC, formerly known as THE LAW OFFICE OF MARA SNYDER PLLC, a Washington Professional Limited Liability Company; ROBERT KEITH MCKAY, Individually and on Behalf of the Former Marital Community Comprised of ROBERT KEITH MCKAY and TIFFANY ANN MCKAY<br><br>Defendants. | No. 2:21-cv-859<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff ALPS Property & Casualty Insurance Company (ALPS) submits the following Complaint for Declaratory Relief.

## I.   INTRODUCTION

1.1   This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C §§ 2201 and 2202. ALPS seeks a determination that it does not owe a duty to defend or indemnify Mara Snyder and/or Pacific Coast Family Law, PLLC formerly known as The Law

Office of Mara Snyder, PLLC (hereinafter collectively, "Snyder") for the acts or omissions forming the basis of the matter entitled *McKay vs. Snyder, et. al*., Whatcom County Superior Court Cause No. 21-2000460-37 (the "Underlying Lawsuit").

## II.     PARTIES

2.1    Plaintiff ALPS Property & Casualty Insurance Company is a foreign insurer organized under the laws of the state of Montana with its principal place of business in the state of Montana.

2.2    Defendant Mara Snyder is a citizen of the State of Washington, and on information and belief most recently resided in Whatcom County, Washington.

2.3    Defendant Pacific Coast Family Law, PLLC is a Washington Professional Limited Liability Company with its principal place of business in Whatcom County, Washington. Snyder is the sole member of Pacific Coast Family Law, PLLC.

2.4    Defendant The Law Office of Mara Snyder, PLLC was a Washington Professional Limited Liability Company with its principal place of business in Whatcom County, Washington. The Law Office of Mara Snyder is currently known as Pacific Coast Family Law, PLLC.

2.5    Defendant Robert McKay is a citizen of the state of Washington who resides in Whatcom County, Washington.

## III.     JURISDICTION AND VENUE

3.1    This court has jurisdiction over this claim pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

3.2     Venue is proper with this Court pursuant to 28 U.S.C. §1391 as this case involves a claim for insurance coverage stemming from the alleged losses that occurred in Whatcom County, Washington.

## IV.     FACTS

**A.     <u>Background</u>**

4.1     This matter arises out of claims under a policy of insurance issued by ALPS to Snyder seeking coverage, defense, and indemnity for claims asserted by McKay including: breach of fiduciary duty, civil contempt, and conversion and theft, arising from Snyder's representation of McKay.

4.2     Defendant Robert McKay and Tiffany McKay were a married couple. On May 21, 2019, McKay retained the Law Offices of Mara Snyder to represent him in the Whatcom County Superior Court dissolution of marriage action entitled *Marriage of McKay,* Whatcom County Cause No. 19-3-00350-37.

4.3     The following allegations form the basis of the Underlying Lawsuit, according to the Complaint filed on or about May 6, 2021:

    4.   During the course of the dissolution action, real estate owned by the McKay's was sold and the proceeds totaled $322,060.52.

    5.   On August 16, 2019, Snyder agreed that she would transfer the proceeds of the sale into the IOLTA account for the Law Offices of Mara Snyder.

    6.   Snyder never deposited the proceeds into either the McKay's trust account or into her IOLTA account.

    7.   On November 4, 2019, Snyder renamed The Law Offices of Mara Snyder, PLCC to its new name, Pacific Coast Family Law, PLCC.

8. On December 6, 2019, Snyder filed a Notice of Withdrawal and Substitution of Counsel in which she purported to transfer representation from The Law Office of Mara Snyder to Pacific Coast, but Snyder remained the only attorney on record on behalf of McKay.

9. On February 26, 2021, the parties were scheduled to attend a mediation. Snyder allegedly failed to attend or appear.

10. On March 1, 2021, the parties were scheduled to participate in a settlement conference. Snyder allegedly failed to attend or appear.

11. Due to Snyder's failure to appear, McKay claims that he was forced to retain replacement counsel.

12. On March 11, 2021, McKay retained replacement counsel to allegedly mitigate the damages caused by Snyder's conduct.

13. McKay allegedly paid more than $26,000 in attorney fees in connection with Snyder's representation in the dissolution.

14. These fees came from motions and filings which allegedly Snyder charged McKay for, but never completed or filed.

15. The Complaint in the Underlying Lawsuit alleges Snyder has failed to account for approximately $262,060.52 in funds owed to McKay.

Complaint, p. 3-7.

4.4   The Complaint asserts causes of action for breach of fiduciary duty, civil contempt, and conversion and theft.

**B.   Claim and ALPS' Response Thereto**

4.5   On May 6, 2021, ALPS received a letter from counsel for McKay enclosing a copy of the Complaint and seeking indemnity under the ALPS policy issued to Snyder.

4.6   ALPS promptly acknowledged the May 6, 2021, letter and initiated a coverage investigation.

4.7     ALPS assigned defense counsel for Snyder, Mr. Jeffrey Kestle, and issued a Reservation of Rights Letter.

C.     **The ALPS Policy**

4.8     ALPS issued a professional liability policy to Pacific Coast Family Law, PLLC, numbered ALPS21034-4 (the "ALPS Policy"). The ALPS Policy incepted on January 3, 2021, with a cancellation date of May 31, 2021.

4.9     The ALPS Policy carries a Limit of Liability in the amount of $250,000 per claim, with a $250,000 aggregate.

4.10    Snyder is listed as a named Insured Attorney on the ALPS Policy.

4.11    The Insuring Agreement for the Coverage part in the ALPS Policy contains the following language, in pertinent parts:

> A.     COVERAGE
>
> Subject to the **Limit of Liability**, exclusions, conditions and other terms of this **Policy**, the **Company** agrees to pay on behalf of the **Insured** all sums (in excess of the **Deductible** amount) that the **Insured** becomes legally obligated to pay as **Damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**, provided that all of the following conditions are satisfied:
>
> 1.  The **Claim** arises from a **Wrongful Act** that occurred on or after the **Retroactive Coverage Date** set forth in Item 2 of the **Declarations**;
>
> 2.  At the **Effective Date** of this **Policy**, no **Insured** knew or reasonably should have known or foreseen that the **Wrongful Act** might be the basis of a **Claim**;
>
> 3.  Notice of the **Claim** or the **Wrongful Act** was not given nor required to be given to any other insurer prior to the **Effective Date**; and

        4.        The **Claim** is not otherwise covered under any other insurance policy that the **Company** has issued to the **Named Insured**.

   B.      **DEFENSE AND CLAIM EXPENSES**

. . .

        2.        The **Company** shall pay **Claim Expenses** in accordance with the terms of this **Policy**. The **Company** shall not have a duty to defend or to pay such expenses as to any **Claim** not covered under this **Policy** and shall have the right to seek reimbursement from any **Insured**, who shall promptly provide such reimbursement, for any amount paid by the **Company** in defending any such non-covered **Claim**, including any amount paid in defending a non-covered **Claim** that is asserted together with one or more covered **Claims**.

. . .

        The right to reimbursement of **Claims Expenses** will only apply to the costs the **Company** has incurred after the **Company** notifies the **Insured** in writing that coverage might not exist under the Policy and that the **Company** is reserving the **Company's** right to terminate the defense or the payment of **Claims Expenses** and to seek reimbursement for **Claims Expenses**.

   E.      **EXHAUSTION OF LIMIT OF LIABILITY AND TENDER OF REMAINING LIMIT OF LIABILITY**

        The **Company**'s duty to defend shall be fully satisfied, and the **Company** shall not be obligated to continue to defend any **Claim** or pay any **Claim Expenses**, nor be obligated to pay any **Damages**, or interest thereon, after:

        1.        The applicable **Limit of Liability** has been exhausted by payments of **Damages** and/or **Claim Expenses**; or

. . .

        In either such case, the **Company** shall have the right to withdraw from further defense of the **Claim** by tendering control of the defense to the **Insured**. The **Insured** agrees, as a condition to the issuance of this **Policy**, to accept such tender.

ALPS-LPL-PREMIER (01-18), as modified by LPL-WA-SAE (01-18.

4.12 The ALPS Policy contains the following definitions which are relevant to the above insuring agreement:

> C. **Claim** means a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the **Insured**.
> . . .
>
> D. **Claim Expenses** means:
>
>   1. Fees charged by any attorney(s) designated by the **Company** to defend a **Claim** or otherwise represent an **Insured**;
>
>   2. All other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **Claim** (including a suit or proceeding arising in connection therewith), if incurred by the **Company**, or if incurred by the **Insured** with the prior written consent of the **Company**;
>
>   3. Premiums for any supersedeas, appeal, attachment or other similar bond approved by the **Company**, but without any obligation of the **Company** to apply for, furnish or issue such bond; and
>
>   4. Any supplementary payments incurred or reimbursed by the **Company** under Section 1.D.
>
> **Claim Expenses** does *not* mean *nor* include salaries or other compensation of regular employees or officials of the **Company** or the **Named Insured**.
> . . .
>
> H. **Damages** means any:
>
>   1. Monetary award by way of judgment or final arbitration, or any settlement; and
>
>   2. Civil liability which may be imposed upon an **Insured** under § 813(a) of the federal Fair Debt

Collection Practices Act (codified at 15 U.S.C. § 1692k(a)), as may hereafter be amended from time to time.

**Damages** does *not* mean *nor* include any:

3. Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

4. Awards deemed uninsurable by law;

5. Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

6. Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;

7. Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or

. . .

O. **Insured** means the **Named Insured** listed in item 1 of the **Declarations** and each of the following, but solely for **Claims** arising from **Professional Services** performed for and on behalf of the Named Insured or a Predecessor Law Firm:

1. An **Attorney** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of the **Policy**, a principal, partner, shareholder, member or other owner or employee of the **Named Insured**, and who is or was identified in Item 3 of the **Declarations;**

. . .

  Y. **Professional Services** means services or activities performed for and on behalf of the **Named Insured** or a **Predecessor Law Firm** and rendered solely to others as:

    1. An **Attorney** in an attorney-client relationship on behalf of one or more clients applying the **Attorney**'s specialized education, knowledge, skill, labor, experience and/or training, including pro bono services;

. . .

  DD. **Wrongful Act** means an actual or alleged**:**

    1. Act, error or omission in **Professional Services** that were or should have been rendered by the **Insured**;

. . .

ALPS-LPL-PREMIER (01-18).

 4.13 The ALPS Policy contains the following exclusion pertaining to dishonest, criminal, intentionally wrongful or harmful acts:

  SECTION 3 – EXCLUSIONS

  THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

  A. Any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an **Insured**, or any **Personal Injury** arising from or in connection with such conduct, subject to Section 6.A. ("innocent insured coverage");

ALPS-LPL-PREMIER (01-18)

 4.14 The ALPS Policy also contains the following exclusion pertaining to conversion, misappropriation, and wrongful disbursement:

  SECTION 3 – EXCLUSIONS

  THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

. . .

        H.      Any conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an **Insured** in any capacity or under any authority, including any loss or reduction in value of such funds or property;

ALPS-LPL-PREMIER (01-18)

    4.15    The ALPS Policy also contains the following exclusion pertaining to fee disgorgement:

    SECTION 3 – EXCLUSIONS

    THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

    . . .

        I.      Any dispute over fees or costs, or any **Claim** that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an **Insured**;

ALPS-LPL-PREMIER (01-18)

    4.16    The ALPS Policy contains the following provision with regard to an insured's duties in the event of an accident or loss:

    SECTION 6 – GENERAL CONDITIONS

    . . .

        B.      INSURED'S OBLIGATIONS UPON NOTICE OF CLAIM OR POTENTIAL CLAIM

            1.      When an **Insured** becomes aware of a **Wrongful Act** that could reasonably be expected to be the basis of a **Claim**, but no **Claim** arising therefrom has yet been made, then as a condition precedent to the **Company**'s obligation to defend or indemnify the **Insured** under this **Policy**, the **Insured** shall immediately give written notice to the **Company**. Such notice shall include the fullest information obtainable concerning the potential **Claim**. The **Insured** must deliver written notice to the

**Company** in accordance with the CLAIMS MADE AND REPORTED POLICY paragraph set forth on page 1 of this **Policy**.

. . .

C. ASSISTANCE AND COOPERATION OF THE INSURED

1. Each **Insured** shall cooperate with the **Company** in its investigation of any **Claim**, including, without limitation, by promptly complying with all requests for any **Insured** to submit to or provide any statements, including any sworn statements or statements under oath of any **Insured**, reports, documents, or other information, and by providing copies of all pertinent files upon request.

2. Each **Insured** shall cooperate and assist, as requested, in the defense of any **Claim**, in making any settlements, and in enforcing any right of contribution or indemnity against any person. If requested by the **Company**, such assistance may include, without limitation, attendance at hearings and trials and assistance in securing and giving evidence and in obtaining the attendance of witnesses. Neither the **Insured** nor the **Insured's** legal representative shall impede the **Company**'s investigation or defense of any **Claim**.

3. Each **Insured** shall notify the **Company** of any demand to arbitrate a **Claim** against an **Insured**, and any right to demand arbitration of a **Claim**, and in the event the **Company** elects to proceed with arbitration, shall cooperate in any such proceeding.

4. No **Insured** shall, without the **Company**'s prior written consent, engage in or offer to engage in any of the following with respect to any **Claim** or potential **Claim**: (a) make any payments; (b) admit any liability; (c) stipulate to the entry of a judgment against the **Insured**; (d) settle any **Claim**; (e) assume any obligation; (f) negotiate any tolling agreement; or (g) incur any expense. If an **Insured** engages in or offers to engage in any of the foregoing, the **Insured** shall do so at the **Insured's** own liability and expense, and such engagement,

action or offer by the **Insured** shall be deemed to be a breach of the **Insured's** duty to cooperate with the **Company** with respect to such **Claim** or potential **Claim**.

ALPS-LPL-PREMIER (01-18)

## V. THERE IS AN ACTUAL JUSTICIABLE CONTROVERSY

5.1     The Coverage Part of the ALPS Policy provides coverage for all sums that the "Insured" becomes legally obligated to pay as "Damages", arising from or in connection with a "Claim" first made against the "Insured" and first reported to the "Company" during the "Policy Period."

5.2     There is an actual and justiciable controversy as to whether the Coverage Part of the ALPS Policy is triggered for the claims asserted against Snyder in the Underlying Lawsuit.

5.3     The ALPS Policy defines "Damages" to mean any monetary award by way of judgment or final arbitration, or any settlement or any civil liability which may be imposed upon the insured. "Damages" does not include any costs for fines, sanctions, disgorgement or set-off of any fees, costs, or expenses.

5.4     There is an actual and justiciable controversy as to whether the claims in the Underlying Suit qualify as "Damages" as that term is defined by the ALPS Policy.

5.5     The Coverage Part of the ALPS Policy agrees to pay "Damages" provided that as of the Effective Date of the policy, no Insured knew or reasonably should have known or foreseen that a "Wrongful Act" might be the basis of a claim. A "Wrongful Act" is defined as an act, error, or omission in "Professional Services" that were or should have been rendered by the insured.

5.6     There is an actual and justiciable controversy as to whether Snyder knew or reasonably should have known or foreseen that a "Wrongful Act" may have been the basis of a claim as that term is defined.

5.7     There is an actual and justiciable controversy as to whether Snyder knew or reasonably should have known a wrongful act might be the basis of a claim before the effective date of the ALPS Policy on January 3, 2021. The Complaint alleges on August 16, 2019, Snyder agreed to transfer funds from the sale of McKay's real estate into an interest bearing or IOLTA account, but allegedly failed to do so. The Complaint further alleges on December 6, 2019, Snyder filed a Notice of Withdrawal and Substitution of Counsel.

5.8     The ALPS Policy defines "Professional Services" to mean services or activities performed for and on behalf of the named insured or a predecessor law firm and rendered solely to others as an attorney in an attorney-client relationship.

5.9     There is an actual and justiciable controversy whether Snyder was performing "Professional Services" as that term is defined.

5.10    There is an actual and justiciable controversy as to whether Snyder was allegedly rendering "Professional Services" in furtherance of an attorney-client relationship when she allegedly failed to account for $262,060.52 in funds owed to McKay and failed to file motions or attend hearings.

5.11    The ALPS Policy defines "Claim Expenses" as fees charged by any attorney designated by ALPS to defend a claim or represent an insured, or all other fees, costs and expenses resulting from the investigation or defense, if incurred by ALPS. ALPS will pay claim expenses in accordance with the terms of the Policy, however, ALPS shall not have a duty to defend or pay such expenses as to any claim not covered under this policy and shall have the

right to seek reimbursement from any insured, for defense costs associated with an uncovered claim.

5.12 There is an actual and justiciable controversy as to whether ALPS has a duty to pay "Claim Expenses" as that term is defined.

5.13 There is an actual and justiciable controversy as to whether ALPS has a duty to defend Snyder against claims made in the Underlying Lawsuit, to the extent the claim is not covered, ALPS has a right to seek reimbursement for costs associated with the defense.

5.14 The ALPS Policy provides that ALPS' duty to defend shall be fully satisfied after the applicable limit of liability has been exhausted by payments of "Damages" or "Claim Expenses." ALPS will not be obligated to continue to defend against any claim or pay any "Claim Expenses" once the limit of liability is exhausted. In either case ALPS shall have the right to withdraw from further defense of the claim by tendering control of the defense to the insured.

5.15 There is an actual justiciable controversy whether ALPS has a duty to defend and if they will be obligated to pay any sort of "Claim Expenses" against the limit of liability as those terms are defined.

5.16 The ALPS Policy specifically excludes coverage for any claim arising from a dishonest, fraudulent, criminal, malicious, or intentionally wrongful act, error, or omission committed by, at the direction of, or with consent of an insured.

5.17 There is an actual and justiciable controversy as to whether claims by McKay arise out of dishonest, fraudulent, criminal, or intentionally wrongful acts due to the fact that Snyder allegedly agreed to place $322,060.52 in proceeds from the sale of McKay's real estate

into an interest bearing account and never did so. Furthermore, Snyder allegedly accepted legal fees to file motions and attend hearings which she never filed or attended.

5.18   The ALPS Policy specifically excludes coverage for any claim arising from any conversion, misappropriation, or negligent supervision of funds or property of any other person, held or controlled by an Insured.

5.19   There is an actual justiciable controversy as to whether Snyder converted, misappropriated, or negligently supervised funds or property of any other person when she allegedly failed to account for $262,060.52 in funds owed to McKay.

5.20   The ALPS Policy specifically excludes coverage for any claim arising from any dispute over fees or costs, or any claim that seeks the return, or reimbursement of fees or costs, or other property held or controlled at any time by the insured.

5.21   There is an actual and justiciable controversy as to whether claims made by McKay are the result of a dispute over fees due to the fact McKay alleges in the Underlying Suit that he is owed $26,000 in attorney's fees related to work he paid Snyder for which she never completed or filed, and $262,060.52 in funds that Snyder has failed to account for.

5.22   The ALPS Policy requires anyone making a claim under the policy must cooperate with ALPS in any manner relating to the claim or lawsuit.

5.23   There is an actual and justiciable controversy as to whether Snyder has cooperated with ALPS and whether any failure to cooperate has materially prejudiced ALPS' investigation or defense of the subject claims.

5.24   The ALPS Policy requires that the insured shall provide written notice in accordance with the policy when an insured becomes aware of a wrongful act that could be

reasonably expected to be the basis of a claim, as a condition precedent to ALPS' obligation to defend or indemnify.

5.25    There is an actual and justiciable controversy as to whether ALPS was provided written notice regarding a wrongful act because Snyder allegedly never provided any sort of notice that any of her alleged wrongful acts could potentially give rise to a claim.

5.26    The ALPS Policy requires that anyone making a claim under the policy must cooperate with ALPS in several respects including, but not limited to, by providing prompt notice of any claims or lawsuits and providing access to records.

5.27    There is an actual and justiciable controversy as to whether Snyder has failed to cooperate with ALPS by failing to provide prompt notice of the claim or suit, or to provide records.

## VI.    RESERVATIONS

6.1    ALPS reserves the right to amend this Complaint to include any other coverage defenses that may become evident during the course of discovery, or which are otherwise currently unknown or unknowable on ALPS' part.

6.2    ALPS further reserves the right to amend this Complaint to include such other coverage defenses that may arise due to future conduct of any parties or third-parties hereto.

## VII.    CLAIM FOR DECLARATORY JUDGMENT

7.1    Pursuant to 28. U.S.C §§ 2201 and 2202, ALPS seeks a judicial declaration of its rights and duties under the ALPS Policy.

7.2    ALPS is entitled to a Declaratory Judgment in its favor, specifically including a judicial determination that it does not owe any defense or indemnity coverage obligations to Snyder or Pacific Coast for claims asserted against them in the Underlying Lawsuit.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, ALPS, having specifically alleged the foregoing, now requests the following relief:

8.1   For a determination of the rights and obligations of the parties hereto under the ALPS Policy.

8.2   For a judicial declaration that ALPS does not owe any defense or indemnity obligations to Mara Snyder or Pacific Coast, for any of the claims asserted against them in the Underlying Lawsuit.

8.3   For all interest as allowed by applicable law.

8.4   For attorney's fees and costs allowed by applicable statute and law.

8.5   For other and further relief as the Court deems just and equitable.

DATED this 25th day of June, 2021.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, WSBA #18089
*/s/ Eric J. Neal*
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for ALPS Property & Casualty Insurance Company*